

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles, Commissioner
General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-5344
Re: Calculation of royalty
due the State on min-
ing claims using smel-
ter returns as a basis
and where transporta-
tion costs and a Govern-
ment subsidy are in-
volved.

We are in receipt of your letter of May 29, 1943,
wherein you enclose a photostatic copy of a letter addressed
to you and written by Mr. Hull Youngblood, president of the
Yodina Mining Company, San Antonio, the substance of which
said letter is as follows:

Mineral awards Nos. 24988 to 24993, inclu-
sive, were issued in accordance with laws be-
ginning with Article 5388 Revised Civil Stat-
utes, 1925, and the following subsequent amend-
ments thereof: Acts 1933, 43rd Legislature,
2nd Called Session, Chapter 20, and Acts 1935,
44th Legislature, Regular Session, Chapter 29.

It appears that Mr. Hull Youngblood owns
these mining claims, and that the principle
minerals to be mined are lead with a possibil-
ity of some silver. The United States Govern-
ment has proposed to pay a subsidy or premium
to encourage the mining of these strategic
metals; such premium would probably be from
2¢ to 4¢ per pound on the processed metals.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE

Furthermore, it appears that the smelter sometimes pays the freight on the shipment of ore to the smelter, but before making its net returns to the owner or operator of the claim, the smelter deducts whatever transportation costs have been paid by it for ore shipments.

In connection with the facts hereinabove set out, you have requested the opinion of this department with respect to the following two questions:

1. In computing the $6\frac{1}{4}\%$ royalty due the State from mining claims by virtue of Article 5395, Revised Civil Statutes, 1925, as amended, should you include in your calculation based on smelter returns the government subsidy or premiums paid to encourage the mining of these strategic metals?

2. In computing the $6\frac{1}{4}\%$ royalty due the State from mining claims by virtue of Article 5395, Revised Civil Statutes, 1925, as amended, should you include in your calculation based on smelter returns the transportation costs paid by the smelter for the shipment of the ore from the mine to the smelter, which costs the smelter deducts before making his net return to the owner of the claim?

From Article 5395, Revised Civil Statutes, 1925, as amended by Acts 1934, 43rd Legislature, 2nd C.S., page 51, chapter 20, paragraph 1; Acts 1935, 44th Legislature, Reg. Sess., page 56, chapter 29. § 1, we quote the following portions thereof which are pertinent to the questions submitted:

" . . . . . In addition to rental payments, the owner of such claims shall pay a royalty of $6\frac{1}{4}\%$ of the value of the production of the minerals upon such claim as shown by the net smelter, . . . . . returns or of the gross sums arising from the sale of the ore or products from the claim and received by the owner. . . ."

A subsidy has been defined as a grant of funds from a government to a private individual or company to assist

in the establishment or support of an enterprise deemed advantageous to the public. 60 Corpus Juris; Words and Phrases, Permanent Edition, volume 40, page 486. From Webster's New International Dictionary, 2nd edition, we quote:

"A subsidy may be simply a gift or consist in the payment of . . . . funds to aid in establishing or maintaining a service or equipment larger or more powerful than the state of trade would warrant . . . ."

Under the provisions of Article 5395, hereinabove set out, the State of Texas is entitled to a royalty of 6¼¢ of "the value of the production of the minerals upon said claim as shown by the net smelter returns." The amounts of moneys to be paid by the Federal Government as set out in the facts herein is in the nature of a subsidy, an outright gift or grant by the Federal Government, to the claim owner who mines the minerals, and is to be paid on account of his cooperation in the plans of the Government in aid of the mining of these strategic metals. Durr Drug Company vs. Acres, 27 So. (2d) 903, at page 907 ¶ 13. Such sums being in the nature of a premium, a gift, a subsidy, are not includable in the computation of the "value of the production of the mineral upon said claim," and the State of Texas should not share therein. Our answer to the first question submitted herein is, therefore, in the negative.

The same quoted provision of Article 5395 provides also the basis upon which to compute the royalty payable to the State. It provides that the State is entitled to a royalty of 6¼¢ of the value of the production of the minerals upon said claim as "shown by the net smelter . . . . returns." (Underscoring ours).. The facts submitted herewith disclose that when the smelter pays the transportation costs for shipment of the ore to the smelter, it deducts these costs before making its net return to the claim owner. It is our opinion that the term "net smelter return" as set out in the statutes means that amount returnable to the claim owner which is clear of, or free from, all charges or deductions for transportation costs,

paid by the smelter. A computation or ascertainment of royalty due the State based on net smelter returns which would include therein transportation costs referred to herein, would be erroneous in one other respect; that is, the resultant amount would be an allowance to the State of a royalty larger in amount than 6⅓% of the value of the production of the minerals upon said claim as provided for in the said statute. We, therefore answer the second submitted question in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Chester E. Ollison_

Chester E. Ollison
Assistant

CEO:ff

o.k.
G.G.R.

APPROVED JUN 5, 1943

(Acting) _Wm. J. Fanning_

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN